Good morning. I'm Stephanie Simpson. I came into the case at the district court level. This is a case which involves two impairments. One of them is chronic fatigue syndrome, which is not a listing, but the procedure for finding a claimant disabled under chronic fatigue syndrome is the use of Social Security Pre-Ruling 99-2P by which the ALJ is bound or any adjudicator is bound. Counsel, as I read the record, she had fatigue, but nobody would diagnose it as this chronic syndrome. Isn't that correct? Pardon? I think no one diagnosed it as the chronic syndrome. Just they admitted she was tired, but that she didn't suffer from the syndrome. Is that accurate? I didn't understand your order. Well, let me repeat it once more. I know that my voice is high and not heard too well. Everybody admitted that she said she was fatigued. Yes. But they did not go that next step and say that she suffered from chronic syndrome, chronic fatigue syndrome. No doctor diagnosed that. Now, is that correct? Well, the chronic fatigue syndrome was denied by Dr. Elkburn, who was a witness at the first hearing. He said that there Well, what I'm trying to bring out, Your Honor, is the importance of Social Security Ruling 99-2P, which conforms with the Center for Disease Control. Now, at the first hearing, the claimant testified. I was not the attorney at the first hearing or second. The claimant testified that she has to rest about four times a day. She's always tired and so forth. And Dr. Elkburn, who's a cardiologist and an internist, testified that the positive laboratory finding was not that important and that she did not meet chronic fatigue syndrome. And he said he doesn't know of any specialist who would state what is required for Now, what happened is the ALJ found against her and it was taken up to DPS counsel. Now, meanwhile, Dr. Joey Brett, who was a treating physician, had diagnosed chronic fatigue syndrome and also a back impairment. Now, she had two other doctors and the back impairment is based upon a herniated disc at C5-6 and an extruded disc at L5-S1 with constant severe pain in the back radiating down the right leg. Now, the judge did find that she had a severe back impairment. This was at the first hearing, but it didn't meet the listings. So the attorney who had the case at that time appealed it. And it was sent back on remand because the appeals counsel said the ALJ had not explained what weight he had given to the reports of the doctors who were treating her. Now, right after that, Dr. Brett's report was sent on January 5, 2006 to the appeals counsel. This was before the remand hearing. And at the remand hearing, the judge did not have Dr. Brett's report where he diagnosed chronic fatigue syndrome and back pain. And the claimant testified at that hearing the same, that she has to rest about four times or five times during the day. And the V.E. testified at that second hearing that if she must rest about 10 to 15 minutes out of each hour, that would exit all the jobs. The ALJ found against her at that time, and I appealed the case to the district court. And we had to do a... Now, I then took it up to Ninth Circuit. Now, after I took it up to Ninth Circuit, recently, I belong to NOSCA, which is the National Organization of Social Security Claimant's Representatives. They sent out a memo on a case in 2006 at the district, New York District Court. There, a claimant had applied for disability benefits based upon chronic fatigue syndrome. And the ALJ had not used Social Security ruling 992P. So the judge remanded, the district court remanded the case, a 2006 case, with instructions for the ALJ to evaluate the case under the requirements of Social Security ruling 992P. Now, what we have here is, even though Social Security ruling 992P is not what is considered a listing, it is still the procedure required by the administration to evaluate whether or not the claimant is disabled under the Social Security Act. Now, if the ALJ, if any ALJ decided to disregard the Social Security rulings or listings, what would we have? We'd have chaos, because claimants would not receive the proper evaluations that they should. Some would, and some would not, which would be against the law. So, therefore, what we have in this case is the chronic fatigue syndrome, and the evidence in the record shows that she, her impairment has the required laboratory findings, which is the FCBAR, and the four clinical findings, which would find that she meets what is required by the administration to be disabled. Under Social Security ruling 992P. In addition, under the listing 104, her back pain, we do have the herniated disc at C5-6, we do have the extruded disc at L5-S1, with constant severe pain in the back, radiating to the right leg. Now, if the listing doesn't, if the back impairment doesn't meet the listing, it at least equals the listing. So, what we have here is a claimant who's, oh, by the way, Dr. Alcorn said her tiredness or fatigue was due to the fact that she had two children, four pets, and life in general, and he couldn't explain why she was tired all the time. So, what we have here is chronic fatigue syndrome under the requirements of the Social Security Act, and we have a back impairment which at least equals listing 104. Thank you. Thank you. Good morning, Your Honors. My name is Carolyn Chen, and I'm representing the Commissioner of Social Security. I'd like to respond to what opposing counsel has stated, but I'll just start off by saying that the ALJ properly Can we get this a little louder? Oh, sorry. You're up at the top. Okay, sorry about that. So, as an initial matter, we have a case of a woman stating that she's disabled by back problems and by chronic fatigue, but she had also testified that she stopped working not because of these impairments, but because she was getting married, and she didn't return to work because she had to take care of her young son. The ALJ in his role as fact finder, he properly considered the evidence of record, including claimant's testimony, but also medical reports, many of which were ambiguous and went in a lot of different directions, and he properly resolved the conflicts and ambiguities. Would you sort out for us which of those doctors were treating doctors and which ones were just examining doctors? Certainly. Okay. The treating doctors are Dr. Esparrago, who is at the Lakeside Medical Group, and he started seeing claimant in 2000 to about 2004. However, in a letter he stated that he didn't really start treating her until 2003. Another treating physician is Dr. Joey Brett. However, the ALJ didn't see his report. It was submitted after the ALJ decision, but the appeals council had reviewed it and rejected it for specific and legitimate reasons. Other physicians are Dr. Timpasti. She was an infectious disease specialist that Dr. Esparrago had claimed it to because of her complaints of fatigue. He hesitated from giving her a firm diagnosis of CFS and instead referred her to an infectious disease specialist. He actually referred her to two, but we only have the records from Dr. Timpasti, who's the second one. Now, did any treating physician diagnose her as having the chronic fatigue syndrome? Right. So going back to your earlier question, there is one doctor who did, and that was Dr. Brett. Now, was that backed up by appropriate evidence? No, it was not. The appeals council stated... Well, why? Okay. The reason why is there are no physical examinations, no mental status examinations, to support any of his diagnoses and limitations. He found some physical limitations. He also stated that she had chronic fatigue syndrome. I will point out that he did refer to some positive EBV lab results, and there's no dispute that claimant had positive EBV. However, the appeals council found that that wasn't sufficient to prove CFS, chronic fatigue syndrome. And they also commented on the EBV diagnosis, saying that just putting that alone didn't say anything. Dr. Brett didn't state the significance of this. It's very difficult, I think, to diagnose it, because there aren't clinical symptoms that show you have X or Y. Is that correct? I'm sorry, clinical symptoms showing... Yes, how do they diagnose it? You're correct. CFS is very difficult to diagnose. There's no specific etiology, and there's no specific specialization. And so because of that, SSA, we employed the Social Security Ruling 99-2P as a guideline for an evaluator like an ALJ to determine, one, whether a claimant has CFS. And SSA goes beyond the criteria of the CDC definition, Center for Disease Control and Prevention, the one that put out the definition of CFS, because in our sequential evaluation process, not only can we say someone has an impairment, but there needs to be a medically determinable impairment. So SSR 99-2P also lays out how you can find a medically determinable impairment after you've found that someone has CFS. The ALJ, if you look on pages of the administrative record 23 and 87, he refers to SSR 99-2P. He applied it, and he did rely on Harvey Alpern, the medical expert's testimony, and found that it was consistent. Dr. Alpern stated that EBV alone does not prove CFS, and that is consistent. What do those initials stand for? I'm sorry. EBV stands for Epstein-Barr virus, and it's often associated with mononucleosis. And mononucleosis is an infectious disease condition. And so it makes sense that claimant's treating physician, Dr. Esparrago, when he couldn't make a firm diagnosis of CFS, he referred the claimant to an infectious disease specialist to look further into it. And Dr. Tempeste said that, yes, she has positive EBV, but it may cause CFS, but she also has a history of anemia, and that could be the cause of her fatigue. There also are some other things in the record, and I wonder if any of the physicians linked those to possible fatigue. There was one physician who questioned whether she might have Vicodin dependence, and there was also some history of depression treated with Xanax and other antidepressants. Was there any testimony to link those as possible sources of fatigue? You mean medical testimony? Right. Right, yes. All of what you had stated, that is in the record. The ALJ found that she didn't have a medically determinable condition of depression based on a consultative examining psychiatrist report, but he found that she was being treated for depression symptoms by Dr. Esparrago. For a period of 2000 to 2002, she complained of depression. He gave her Prozac and said that it seemed to have improved. And then Dr. Zaki, I believe, who's a pain management specialist, that Dr. Esparrago had referred claimant to for her complaints of back pain, stated that, you know, she's still complaining of back pain, but I don't really see any other problems. You know, neck examination normal, ranges of motion normal. However, continue Vicodin, but make sure that, you know, pay attention that she doesn't become dependent on Vicodin. And Dr. Alpern had also noted in his testimony at the hearing that, yes, there are these other reasons why claimant could be fatigued. Opposing counsel had mentioned how, you know, she's a mother of a young child and she runs the household. As the husband had testified in his third-party function report, that she basically ran the household and took care of the pets and did the chores and did grocery shopping. But also she was taking Vicodin, which can make someone sleepy. Claimant said that it didn't evoke her up, so he didn't argue with her on that. He also noted that she took Xanax for her anxiety complaints. And she also stated that she took Xanax to help her fall asleep, and that could be a possible reason why she was fatigued as well. I also want to point out another medical opinion. Dr. Ganell, who is a hematologist, stated that he confirmed that she did have anemia and also stated she probably had a B12 deficiency and said that her main problem was smoking. What is what? Smoking. She had been smoking since she was a teenager. And he acknowledged the positive EBV results, but didn't find them significant. And this is the latest medical... Positive what results? Oh, I'm sorry, EBV, Epstein-Barr virus. So continuing on, just to respond to opposing counsel's comments... Well, I actually don't know, but the good thing about diagnosing EBV infection, Epstein-Barr virus, is that we can actually have lab results that can tell you whether you have high amounts of EBV. And there's no dispute that she did have positive Epstein-Barr virus results. It's in the record, their lab report. That would certainly lead one to believe that the diagnosis of the chronic fatigue syndrome had some clinical backing. Isn't that right? That one fact finder could find that, but another fact finder could find that could not. In our case, the ALJ didn't. And he closely looked at the definition that SSR 99-2P points out. And just to go over it really quickly, SSR 99-2P says that to have CFS, chronic fatigue syndrome, there must be a specific onset of persistent fatigue, i.e., that means it's not lifelong. And as Dr. Alpern and the ALJ noted, in the record, there's no specific onset of this fatigue. In the record, it shows that she started complaining of fatigue in 2000. It stopped again in 2004. And that's when Dr. Osporaga started getting the wheels in motion for referring her to an infectious disease specialist. However, claimant herself testified that her fatigue was lifelong since she was a teenager. The ALJ reasonably found that there was no specific onset of this fatigue. Secondly, what's required by the CDC is that there needs to be no other physical or mental disorder that would explain the fatigue. And there are a lot of things that could be explaining the fatigue. Like, as I stated earlier, Dr. Tempesti, an infectious disease specialist, found that it might have been her anemia that caused the fatigue. Dr. Ganell, the hematologist, said that it was probably her smoking and that she had – he confirmed that she had anemia and a B12 deficiency. And she was raising a young child, which is in itself a very strenuous task, and she was running a family, a household. And along with that, there's a lot of requirements. There's a requirement that there needs to be concurrent symptoms, four out of six, that this SSR99TP lays out. And some of them are sore throat, swollen lymph nodes, unrefreshing sleep. Claimant says she didn't have refreshing sleep, but the record undermines that. She reported to consultative Xanax psychiatrist, Dr. Ripvo, that she slept fine and that Xanax helped her sleep. Also, another requirement is muscle pain. There's no dispute she had muscle pain, but this isn't the type of generalized muscle pain that's associated with CFS. It was because she had degenerative disc disease in her back. She did have back pain, but the ALJ properly found that it was not disabling. She could stand and sit fine. She could – she had fine range of motion, intact muscle strength. Also, another requirement is post-exertional malaise lasting more than 24 hours. She stated that sometimes she needed to lie down for an hour and a half, but not more than 24 hours. And there is a self-reported memory loss, but again, that's undermined by the record, by mental status examinations showing that she had no impairment in concentration or memory, and she was alert and oriented in various doctor's visits. I'm sorry, I've gone over my time. That's all right. That's very interesting. Thank you. But the ALJ – I just want to end by saying the ALJ served his role as fact finder by resolving ambiguities and conflicts in the record, and he properly resolved them, and for that reason the court should uphold the ALJ's decision. Thank you. Okay. Did the court want a copy of that NASCA memo that I brought? I'd be glad to run it off and see the court gets it. That's the one that the district court sent the case back to the ALJ for him to evaluate the chronic fatigue syndrome under the rules – under the requirements of Social Security ruling 992B. Would you like that? Well, is it part of the district court record? Pardon? Is it part of the record? No, it isn't, because after I sent it in, NASCA did send anybody who belongs to them a copy of that. I mean, is that – that's part of what the district court – No. No. But it came from New York, and I would say I got it about a year ago, and when I saw chronic fatigue syndrome and sent back for the ALJ to use Social Security ruling 992P, I knew it would be part of my record. You can give us the cite to the case that was cited there and give it to opposing counsel, but that's all that you can do. Okay. All right. May I just say that according to the evidence, claimant's impairment meets the requirements of Social Security ruling 992P, which is still the required one for finding a person disabled under the Act. Thank you. Okay. We'll give you – all right. You just leave us that information. The case citation. The case citation. All right. Yeah. Well, you can write it down on a little piece of paper. Pardon? You can write that citation out on a piece of paper. Yes. And leave it. You can leave it with the deputy clerk. The clerk will help you. Mr. Brown will help you. He'll come down and help you. All right. Thank you. Good to see you. Call the next matter. Cerner v.
judges: Fletcher B. , Pregerson, Graber